## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| ULTIMATE OUTDOOR | * | |
| MOVIES, LLC, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Case No.: SAG-18-2315 |
| | * | |
| FUNFLICKS, LLC, et al., | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Ultimate Outdoor Movies, LLC and Laura Landers ("Plaintiffs") filed suit against Defendants Charles Hunter, Matthew Dias, and FunFlicks Audiovisuals (collectively "the California Defendants"); Todd Severn and FunFlicks, LLC (collectively, "the Severn Defendants"); and James Gaither and NATJAY, LLC (collectively, "the Gaither Defendants"). ECF 1. Plaintiffs allege fraud; aiding and abetting; breach of contract; violations of the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law § 11-1201 *et seq.*, and the Federal Trade Secrets Act, 18 U.S.C. § 1836; defamation; intentional interference with contract; violations of the Federal Wiretap Act, 18 U.S.C. § 2511, and the Texas Wiretap Act, Tex. Civ. Prac. & Rem. Code Ann. §123.001 *et seq.*; violations of the Federal Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A)-(B); unfair competition; intentional interference with economic relations; and civil conspiracy. ECF 21. Presently pending is the California Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim.[1] ECF 26. Plaintiffs opposed the Defendants' Motion on December 5, 2018, and Defendants filed a Reply. ECF 32, 45. On December 13, 2018, Plaintiffs

---

[1] Other motions to dismiss are also pending, and will be addressed separately.

filed a Supplemental Opposition to Defendants' Motion, ECF 40, which Defendants moved to strike as untimely, and in the alternative, requested that the Court accept Defendants' additional pages of argument in response to Plaintiffs' supplemental arguments, ECF 49. Plaintiffs filed a Motion for Leave to File a Supplemental Opposition on December 27, 2018, ECF 50, and an Opposition to Defendants' Motion to Strike, ECF 54. Defendants opposed Plaintiffs' Motion, ECF 60, and Plaintiffs did not file a Reply.

This Court held a hearing on Defendants' Motion on January 23, 2019. ECF 86. For the reasons stated below, I shall deny Defendants' Motion to Strike Plaintiffs' Supplemental Opposition to Defendants' Motion, ECF 49, grant Plaintiffs' Motion for Leave to File a Supplemental Opposition, ECF 50, and defer Defendants' Motion to Dismiss, ECF 26, pending jurisdictional discovery, which shall be conducted in accordance with the accompanying Order.

## BACKGROUND[2]

Individual Defendants Matthew Dias ("Dias") and Charles Hunter ("Hunter") are residents of California. ECF 26-5 ¶ 7, 26-6 ¶ 8. Defendant FunFlicks Audiovisuals ("FF-AV"), a company that provides outdoor movie entertainment, was incorporated in California and maintains its principal place of business in Bakersfield, California. ECF 26-5 ¶¶ 3-4, 26-6 ¶¶ 4-5. Dias is the Vice President and Chief Financial Officer of FF-AV, ECF 26-5 ¶ 2, and Hunter is the Chief Executive Officer of FF-AV, ECF 26-6 ¶ 3. FF-AV does not have an office or any employees in Maryland, does not own property in Maryland, does not have a resident agent for service of process in Maryland, does not have a mailing address or telephone number in Maryland, and does not maintain a bank account in Maryland. ECF 26-5 ¶¶ 5-6, 26-6 ¶¶ 6-7. Dias and Hunter have never

---

[2] The facts are derived from the substantive declarations Defendants submitted in support of their motion, ECF 26-5, 26-6, and from Plaintiffs' Amended Complaint, ECF 21. This section is limited to facts relevant to the determination of jurisdiction over the California Defendants.

lived in Maryland, have never owned, rented or leased any real or personal property in Maryland, have never worked or attended school in Maryland, have never paid taxes in Maryland or maintained any type of bank or securities account in the state, and have never traveled to Maryland to participate in any judicial proceedings or arbitrations. ECF 26-5 ¶¶ 8-15, 26-6 ¶¶ 9-16.

Plaintiff Ultimate Outdoor Movies, LLC ("UOM") is a Texas-based outdoor inflatable movie screen rental company. ECF 21 ¶ 2. Plaintiff Laura Landers ("Ms. Landers"), a Texas resident, is the full owner of UOM. *Id.* ¶ 1, 56 n.2. Ms. Landers's husband, Darrell Landers ("Mr. Landers") is Chief Executive Officer and Vice President of UOM. *Id.* ¶ 56 n.2. Mr. Landers is not a party to this action. Defendant Todd Severn ("Severn") is the original owner and creator of the outdoor inflatable movie screen rental brand known as "FunFlicks." *Id.* ¶ 48. Severn operated the business as FunFlicks, LLC ("FF-Severn") in Maryland, from approximately 2002 to January 1, 2013. *Id.* During this time, FF-Severn granted non-exclusive licenses to individuals and small business owners, including Mr. Landers in or about April of 2008, for the purpose of operating a business under the FunFlicks name. *Id.* ¶¶ 49, 55. When UOM was formed in 2010 under the name "Fun Flicks Outdoor Movies of Texas, Inc.," Mr. Landers transferred his FunFlicks licenses to UOM. *Id.* ¶ 2, 56. In or about December of 2012, Mr. Landers incorporated a separate entity in Texas, "FunFlicks, Inc." ("FF-Landers"). *Id.* ¶ 58. In or about January of 2013, FF-Landers bought the rights to the FunFlicks brand from FF-Severn through an asset purchase agreement ("2013 APA"). *Id.* ¶¶ 15, 58-61.

In or about the fall of 2017, FF-Landers withheld payment to FF-Severn, and the parties began negotiating a restructuring of the 2013 APA. *Id.* ¶¶ 96-125. In or about December of 2017, FF-Severn approached the California Defendants to replace FF-Landers as the buyer of the FunFlicks brand. *Id.* ¶¶ 115-125. The California Defendants and FF-Severn executed an asset

purchase agreement ("2017 APA"), selling the assets covered under the 2013 APA to the California Defendants. *Id.* ¶ 116. The 2017 APA is governed by Maryland law. *Id.* ¶¶ 118, 119, Exh. 4. Plaintiffs allege the 2013 APA did not cover the after-acquired property of FF-Landers and, when FF-Landers learned of the 2017 APA, FF-Landers and FF-Severn began a second round of negotiations to resolve their remaining disputes over the 2013 APA. *Id.* ¶¶ 129, 130, 139. During negotiations, FF-Severn had control of the www.FunFlicks.com URL, held in escrow on a separate server, pursuant to the 2013 APA. *Id.* ¶ 137(1) n.4.

While negotiations were ongoing between FF-Landers and FF-Severn, Plaintiffs allege that the California Defendants contacted Ms. Landers to discuss UOM's continuation of its license under the FunFlicks brand. *Id.* ¶ 140. They also allege that, on or about February 5, 2018, the California Defendants executed a new licensing agreement with Defendants James Gaither ("Gaither") and his Maryland-based company, NATJAY, LLC, for Gaither to operate as a FunFlicks licensee in the Maryland territory. *Id.* ¶ 182. On or about February 27, 2018, Plaintiffs allege that Gaither, on behalf of all of the Defendants, sent an email to all FunFlicks customers from UOM's mid-Atlantic client list, warning clients, among other things, that a "Texas business has been marketing outdoor movies using the FunFlicks name without authorization." *Id.* ¶ 212. On March 3, 2018, FF-Landers and FF-Severn executed a Release and Settlement Agreement, settling their dispute over the 2013 APA. *Id.* ¶¶ 245-255. On or about March 1, 2018, FF-Severn disconnected the FunFlicks URL link to FF-Landers's server and redirected the domain to the California Defendants. *Id.* ¶¶ 259, 260. Plaintiffs allege that the California Defendants "re-create[d] related directional protocols on its own separate e-mail/web server" for emails sent to "@funflicks.com." *Id.* ¶¶ 260-262.

On or about April 27, 2018, a former UOM client in Maryland, "Megan," received an email from Gaither in response to Megan's inquiry sent to events@funflicks.com and addressed to "Kenneth," a UOM employee. *Id.* ¶ 274. After receiving Gaither's response, Megan booked her event with Gaither and NATJAY, LLC, and not with UOM. *Id.* ¶¶ 275, 276, Exh. 16. On or about June 14, 2018, Mr. Landers sent an email to "darrell@funflicks.com," posing as a client seeking FunFlicks services for events in Alabama, Arizona, California, Colorado, Connecticut, Florida, Illinois, Indiana, Louisiana, North Carolina, and Texas. *Id.* ¶¶ 269, 270, Exh. 14. Mr. Landers never received the email he sent to his former address, but the fictitious client received a response from Severn. *Id.* ¶ 271.

## STANDARD

The California Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) challenges this Court's personal jurisdiction over them. Under Rule 12(b)(2), the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)). When "a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst of Md.*, 334 F.3d at 396 (citing *Combs*, 886 F.2d at 676). To determine whether the plaintiff has met this burden, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676. The court need not "look solely to the plaintiff's proof in drawing" all reasonable inferences in plaintiff's favor, and may

also look at the defendant's proffered proof and assertions regarding defendant's lack of contacts with the forum state. *Mylan Labs., Inc.*, 2 F.3d at 62. "When the existing record is inadequate to support personal jurisdiction over a defendant, the plaintiff is entitled to jurisdictional discovery if it can demonstrate that such discovery would yield 'additional facts' that would 'assist the court in making the jurisdictional determination.'" *FrenchPorte IP, LLC v. Martin Door Mfg., Inc.*, Civil Action No. TDC-14-0295, 2014 WL 4094265, at *5 (D. Md. Aug. 14, 2014) (first quoting *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005); and then citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (Fed. Cir. 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous.'")).

To exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, pursuant to Federal Rule of Civil Procedure 4(k)(1)(A); and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst of Md.*, 334 F.3d at 396. When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals. *See Carbone v. Deutsche Bank Nat'l Tr. Co.*, Civil Action No. RDB-15-1963, 2016 WL 4158354, at *5 (D. Md. Aug. 5, 2016); *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 135-36 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985); *see also Mylan Labs.*, 2 F.3d at 61 (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 178 (1938)). Moreover, courts must address both prongs of the personal jurisdiction analysis, despite Maryland courts consistently holding that "the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the due process clause of the Constitution." *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *see CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 984 A.2d

492, 501 (2009) (noting that the personal jurisdiction analysis "entails dual considerations"); *Carefirst of Md.*, 334 F.3d at 396.

Under the first prong, the plaintiff must identify a provision in the Maryland long-arm statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). Under the second prong, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milleken v. Meyer*, 311 U.S. 457, 463 (1940)). This "minimum contacts" analysis depends on the number and relationship of a defendant's contacts to the forum state, and whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Id.* at 316-19.

Finally, a court may exercise two types of personal jurisdiction, "general" or "specific." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). "General" jurisdiction is a fairly limited concept, since it only arises where "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against [defendant] on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). In the context of a corporation, the paradigm bases for general jurisdiction are "the place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The *Daimler* court clarified that while those paradigms are not necessarily the only bases for general jurisdiction, it would be "unacceptably grasping" to

approve the exercise of general jurisdiction wherever a corporation, "engages in a substantial, continuous, and systematic course of business."  *Id.* at 137-38 (declining to find general jurisdiction lies in every state in which a corporate defendant has "sizable" sales).

"Specific" jurisdiction arises when there is an "affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919; *Carefirst of Md.*, 334 F.3d at 397.  To assess specific jurisdiction, the Fourth Circuit considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

## ANALYSIS

The California Defendants argue that this Court does not have personal jurisdiction over them.  ECF 26-1 at 9-14.  As bases for personal jurisdiction, Plaintiffs have cited the conspiracy theory of jurisdiction, and they have identified three provisions in Maryland's long-arm statute: Maryland Courts and Judicial Proceedings Article ("MJCP") § 6-103(b)(1) (transacting business), § 6-103(b)(3) (causing tortious injury), and § 6-103(b)(4) (causing tortious injury by act or omission outside the state if deriving substantial revenue from "goods, food, services, or manufactured products used or consumed" in Maryland).  ECF 32 at 5-6; ECF 40 at 1.  Plaintiffs identified MJCP § 6-103(b)(1) as a basis for jurisdiction in their Supplemental Opposition to Defendants' Motion.  ECF 40.  While Defendants oppose Plaintiffs' Supplemental Opposition as untimely filed, this Court must construe Plaintiffs' allegations in the light most favorable to Plaintiffs, "assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.  Accordingly, I will grant Plaintiffs' Motion for Leave to

File a Supplemental Opposition to Defendants' Motion, ECF 50, deny Defendants' Motion to Strike Plaintiffs' Supplemental Opposition, ECF 49, and I will consider Plaintiffs' supplemental basis for jurisdiction. I will also incorporate Defendants' additional pages in their Motion to Strike as part of their Reply in Support of their Motion to Dismiss. ECF 49-1 at 6-10.

While the Defendants do not dispute their purchase of a Maryland company in 2017, and the existence of license agreements between FF-AV and Maryland businesses, they maintain that these facts alone do not establish that Plaintiffs' injury arose out of any transaction of business in Maryland by the California Defendants, or any other "minimum contacts" with the state necessary for personal jurisdiction. ECF 26-1 at 9-14; ECF 49-1 at 6-7. Plaintiffs contend that the California Defendants engaged in a business transaction with Gaither to "unlawfully divert UOM's customers in Maryland to Gaither and NATJAY through deceptive and uncompetitive [sic] means to obtain additional royalties from services [] provided to Maryland Residents." ECF 40 at 3; ECF 21 ¶¶ 435, 436. They also argue that the California Defendants hired Severn, a Maryland resident, to be a consultant in Maryland and to train new licensees. ECF 40 at 4; ECF 21 ¶ 230.

In the same way that the existence of a franchise agreement does not automatically confer personal jurisdiction over a non-resident defendant, the existence of a license agreement between a non-resident defendant licensor and a Maryland licensee also does not automatically confer personal jurisdiction over the defendant, without additional facts indicating purposeful activity in the state. *See FrenchPorte IP, LLC v. Martin Door Mfg., Inc.*, Civil Action No. TDC-14-0295, 2014 WL 4094265, at \*12 (D. Md. Aug. 14, 2014) ("the mere fact that a franchisor has a franchise in Maryland does not make it subject to personal jurisdiction here"); *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d. 617, 621 (D. Md. 1998) (finding a license agreement that imposed a "significant Maryland nexus" constituted "significant commercial activity toward

Maryland" conferring personal jurisdiction over a corporate defendant). Factors courts consider to find such purposeful availment, beyond a license or franchise agreement, include "continuing significant contractual duties [under the agreement], e.g. reporting and payment obligations." *Choice Hotels Int'l, Inc.*, 23 F. Supp. 2d at 621. To date, this Court has not been provided with a copy of the license agreement between FF-AV and Gaither or NATJAY or any other Maryland resident.

In this case, Defendants dispute the allegation that they hired Severn as an employee, and they argue that Plaintiffs' claims do not arise out of the existence of their license agreements with Maryland businesses. ECF 49-1 at 6-7. However, Plaintiffs' allegations surrounding the California Defendants "responding or redirecting" emails meant for UOM "to further [] the theft of UOM's clients," coupled with the email responses from Gaither and Severn to alleged UOM clients, raise a question as to the extent of the California Defendants' purposeful activity in Maryland. ECF 21 ¶¶ 260-262, 435, 436, Exhs. 14, 15. Questions remain as to the degree of control the California Defendants exercise over their Maryland licensees, whether the California Defendants derive benefits from business obtained by any of those licensees, such as royalty payments, the California Defendants' role, if any, in disseminating emails sent to the all@funflicks.com email box, and the nature of the California Defendants' relationship with Severn and/or FF-Severn, all of which could potentially confer personal jurisdiction over the California Defendants in Maryland. *See FrenchPorte IP, LLC*, 2014 WL at * 13.

On the current record, this Court is unable to determine if exercising personal jurisdiction over the California Defendants would conform with the Fourteenth Amendment and Maryland's long-arm statute. However, some limited jurisdictional discovery, focused on the questions listed above, would enable this Court to resolve the personal jurisdiction question. Accordingly, this

Court will order limited jurisdictional discovery from the California Defendants, pursuant to the terms outlined in the accompanying Order. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) ("Discovery under the Federal Rules of Civil Procedure is, of course, broad in scope and freely permitted . . . [and] limited discovery may be warranted to explore jurisdictional facts"). After the limited jurisdictional discovery, Plaintiffs will be permitted to file a supplemental submission regarding this Court's personal jurisdiction, and the California Defendants will be permitted an opportunity to reply.

Dated: January 31, 2019                                         /s/
                                                      Stephanie A. Gallagher
                                                      United States Magistrate Judge